EXHIBIT A

**LexisNexis® Total Research System**

Sign Out | ? Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector

FOCUS™ Terms  vitaminwater and "Beve  Search Within  Original Results (1 - 7)   Go →  Advanced...

All Results - (7) | Cases - (7) ▶ | Statutes & Regulations (Legislative) - (1) | Agency Materials - (2) ▶

Source: **Combined Source Set 12** - Fed. Trademark, Unfair Comp. & Trade Secret Cases & Admin. Decisions; Fed. ...
Terms: **vitaminwater and "Beverage Marketing USA"** (Edit Search | Suggest Terms for My Search)

⬅Select for FOCUS™ or Delivery

☐

*2002 U.S. Dist. LEXIS 7763, \**

ENERGYBRANDS, INC., Plaintiff, v. **BEVERAGE MARKETING USA,** INC. and HORNELL BREWING COMPANY, INC., d/b/a ARIZONA BEVERAGE COMPANY, Defendants.

02 Civ. 3227 (JSR)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 7763

May 1, 2002, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff manufacturer sued defendant competitors for trade dress infringement in violation of the Lanham Act. The manufacturer sought a preliminary injunction and a temporary restraining order enjoining continuing sale of the accused product. The court heard oral argument on whether to grant the manufacturer immediate, temporary relief.

**OVERVIEW:** The manufacturer alleged, inter alia, that the competitors used product packaging that was so similar to the manufacturer's unique trade dress to create consumer confusion, causing not only a loss of sales but irreparable harm to the manufacturer's good will. The court noted a remarkable similarity between the packaging of the parties' products; each label's lettering style, layout, and coloration, taken together, conveyed the same impression. In addition, there was evidence that the similarity was not coincidental and that it was causing actual consumer confusion. Although the manufacturer's evidence had not yet been tested at an evidentiary hearing, the evidence of consumer confusion and the manufacturer's likely success on the merits of its Lanham Act claim was strong. Further, the potential harm to the manufacturer was great, while there were factors mitigating the potential long-term harm to the competitors.

**OUTCOME:** The court granted the motion for a temporary restraining order.

**CORE TERMS:** consumer, trade dress, sworn, label's, packaging, temporary, evidentiary hearing, color, font, advertising, similarity, anecdotal, retailers, clean, injunction, Lanham Act, brand name, secondary meaning, bad faith, irreparable, distinctive, beverages, media, alternating, distributors, vertically, promoting, clinical, selling, regular

## LEXISNEXIS® HEADNOTES

⊟ **Hide**

Trademark Law > Conveyances > General Overview 
Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview

Trademark Law > Subject Matter > Secondary Meaning > General Overview
HN1± Where a product's packaging has acquired a secondary meaning, it is entitled to trade dress protection. More Like This Headnote | *Shepardize:* Restrict By Headnote

Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview
Trademark Law > Subject Matter > Secondary Meaning > General Overview
HN2± Regarding trade dress protection, secondary meaning is established, in part, through extensive advertising, commercial success, and unsolicited media coverage. More Like This Headnote

Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview
Trademark Law > Likelihood of Confusion > Intent > Presumptions
HN3± Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion. In determining a defendant's intent, actual or constructive knowledge of the prior user's mark or dress may indicate bad faith. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** [*1] For ENERGYBRANDS, INC., plaintiff: David H. Bernstein, Patricia Gayle Corley, Jyotin Hamid, Debevoise & Plimpton, New York, NY.

**JUDGES:** JED S. RAKOFF, U.S.D.J.

**OPINION BY:** JED S. RAKOFF

**OPINION**

*MEMORANDUM ORDER*

JED S. RAKOFF, U.S.D.J.

By this action, filed April 29, 2002, plaintiff EnergyBrands, Inc., the makers of a product called "**VitaminWater**," seeks, *inter alia*, to enjoin the continuing sale of defendants' competing product called "WaterAid+." Among other things, plaintiff claims that the packaging of the WaterAid+ product is so similar to **VitaminWater's** unique trade dress as to create consumer confusion, in violation of the Lanham Act, causing not only a loss of sales but irreparable harm to the good will that plaintiff, as the market leader in nutrient-enriched water, has expended significant resources developing.

The Court has already scheduled a full evidentiary hearing beginning June 3, 2002 on plaintiff's motion for a preliminary injunction. In the meantime, however, plaintiff seeks temporary relief. Accordingly, the Court, after receiving the parties' written submissions, heard oral argument from the parties' able counsel, *see* transcript 4/30/02. Based on those submissions [*2] and arguments, the Court, purely for the purpose of assessing the application for temporary relief and without prejudice to any subsequent findings after the evidentiary hearing, makes the following findings and conclusions:

Plaintiff began selling **VitaminWater** in 2000, and has since invested several million dollars in advertising and promoting its product, particularly by capitalizing on its unique product packaging. This distinctive packaging is best appreciated by being seen, but may be described as including, among other things, a white label with a color band reflecting the corresponding color of the water, a vertically written brand name in alternating bold and regular font, and a clean black font creating a clinical or medical "feel."

Media attention has focused on **VitaminWater's** product design, and **VitaminWater** was recently named a "Silver Winner" at the Eighth Annual Beverage Packaging Design Award. *See* Declaration of Darius Bikoff sworn to April 25, 2001 ("Bikoff Decl.") at P 7, Exs. 7-12. Also, since the introduction of this design, **VitaminWater** has experienced marked commercial success, with a 755% increase in sales between 2000 and 2001 and a 250% increase in sales [*3] for the period January to April 15, 2002 compared to the

same period in 2001. Bikoff Decl. at P 27. Such factors indicate that <sup>HN1</sup>**VitaminWater's** packaging has acquired a secondary meaning, thereby entitling it to trade dress protection. *See, e.g., Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 129 (S.D.N.Y. 1993)(secondary <sup>HN2</sup>meaning established, in part, through "extensive advertising, commercial success, and unsolicited media coverage.").

Against this background, the defendants, utilizing their "AriZona" brand, introduced in February 2002 their competing WaterAid+ product, which they now sell in seven states, including New York. *See* Declaration of John Balboni sworn to April 29, 2002 ("Balboni Decl.") at P 3. Like **VitaminWater,** WaterAid+ is packaged in 20-ounce clear bottles displaying the colored, vitamin-enriched water being sold. Like **VitaminWater,** WaterAid+ uses a white wrap-around label with a color band matching the color of the water. Like **VitaminWater,** the product name, WaterAid+, is printed vertically on the label in alternating regular and bold black font. Like **VitaminWater,** the WaterAid+ label employs a clean black font evincing a **[\*4]** clinical overtone. Like **VitaminWater,** which employs the tag line "Drink Better Water" on it's label, WaterAid+'s label reads "Better Water."

In short, on any visual inspection, the trade dress of WaterAid+ appears very similar to the distinctive trade dress of **VitaminWater** -- a similarity made all the more striking by the fact that the labels on other, more or less comparable beverages do not remotely resemble **VitaminWater's.** *See* Bikoff Decl., Exs. PP 21-26. Indeed, about the only material difference between the trade dress of WaterAid+ and that of **VitaminWater** is the appearance of the brand name "AriZona" on defendants' product. *See* Declaration of Dominick Vultaggio sworn to April 29, 2002 ("Vultaggio Decl.") at P 3, Exs. A, B. But even with this difference, the overall similarity between the two products is remarkable. *See, e.g., Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993)("Each label's lettering style, layout, and coloration, taken together, convey the same impression: a design that is simple, clean, and stark.")

Furthermore, there is evidence that this similarity -- and its tendency to confuse -- is far from **[\*5]** coincidental. In particular, defendants only launched their WaterAid+ product after having made a failed attempt to acquire an interest in **VitaminWater** in 2001. *See* Bikoff Decl. at PP 28-30. *See Paddington Corp.*, 996 F.2d at 586 <sup>HN3</sup>("Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion. . . .In determining a defendant's intent, 'actual or constructive knowledge' of the prior user's mark or dress may indicate bad faith.").

Beyond all this, plaintiff has adduced both survey and anecdotal evidence of actual consumer confusion. Plaintiff's survey of 220 potential purchasers, split into a test group and a control group and modeled after other court-approved studies for evaluating trade dress confusion for items sold in grocery stores, indicates about 17% net consumer confusion between the two products. *See* Declaration of George Mantis sworn to April 25, 2002 (describing the survey design and results); *Volkswagen Astiengesellschaft v. Uptown Motors*, 1995 U.S. Dist. LEXIS 13869, 1995 WL 605605, \*8-9 (S.D.N.Y. 1995)(evidence of 17% consumer confusion sufficient to support **[\*6]** finding of likelihood of confusion); *Kraft General Foods v. Friendship Dairies*, 1991 U.S. Dist. LEXIS 18213, 1991 WL 149755, \*3 (S.D.N.Y. 1991)(same). Plaintiff also provides anecdotal evidence of actual confusion by five consumers and two retailers. *See* Bikoff Dec. P 44, Exs. 38-40; Declaration of William Vespe sworn to April 18, 2002, at PP 3-6; Declaration of Kouros Torkan sworn to April 28, 2002 at PP 3-6; Declaration of Clemente Adams sworn to April 18, 2002, at PP 6-11; Declaration of Steve Gress sworn to April 24, 2002, at PP 6-9; Declaration of Darin Shapiro sworn to April 24, 2002, at PP 6-7. While defendants raise some potential problems with both the survey and the anecdotal evidence (all of which will be further examined at the forthcoming evidentiary hearing), the evidence is sufficiently probative on its face to reinforce the Court's present conclusion that there is a substantial likelihood of consumer confusion.

The Court has considered other relevant factors as well, *see Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961), and finds that, to the extent relevant, they tend to support plaintiff's position. Even after discounting for the fact **[\*7]** that plaintiff's proof has not yet been put to the test of a full evidentiary hearing, the evidence of consumer confusion and of plaintiff's likely success on the merits of its Lanham Act claim is strong. While this alone would be enough to establish irreparable injury and warrant temporary relief, *see, e.g., Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988), the need for immediate relief is further reinforced by the fact that plaintiff is a new company that derives 85% of its revenue from **VitaminWater,** *see* Bikoff Decl. at P 11, so that ongoing consumer confusion could have

significant negative effects on its current and future success. In contrast, defendants are established companies that derive only a small portion of their revenues from WaterAid+, thus mitigating any long-term impact from a temporary disruption in the sales of one of their many products.

Given the strong evidence of consumer confusion, as well as the other factors mentioned above, the Court is driven to the conclusion that plaintiff is entitled to immediate and substantial temporary relief to prevent any further consumer confusion (and to thereby preserve the status quo). Accordingly, [*8] defendants, and all those acting in concert or participating with them, are hereby temporarily enjoined from distributing, shipping, advertising, marketing, promoting, selling and/or offering for sale WaterAid+ in its current trade dress or substantially similar trade dress. In order to avoid harm to third parties, this injunction does not preclude any retailers or distributors who have already purchased WaterAid+ from defendant and taken actual delivery thereof from reselling such WaterAid+ presently in their possession; but the injunction does preclude defendants from, among other things, filling any pending orders for WaterAid+ from such distributors and/or retailers, as well as from entering into new orders for WaterAid+, pending further order of the Court.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York

May 1, 2002

Source: **Combined Source Set 12** - Fed. Trademark, Unfair Comp. & Trade Secret Cases & Admin. Decisions; Fed. ...
Terms: **vitaminwater and "Beverage Marketing USA"** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Friday, September 17, 2010 - 2:49 PM EDT

\* Signal Legend:
- ● - Warning: Negative treatment is indicated
- [Q] - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
Sign Out | Help

LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2010 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.